Good morning, ladies and gentlemen. We have a new sound system in the courtroom, so if you have trouble hearing or if it's much too loud or something, if you'll just let us know so that we can make sure that everyone can be heard and they can hear what's going on. This is our first argument to try out our new sound system, so thank you. Our first case for today is 2023-60601, West Texas Gulf Pipe Line Company v. FERC. We'll hear first from Ms. Johnson. Thank you, Your Honor. May it please the Court, Ashley Johnson for the petitioners. The Commission's decision to deny petitioners authority to charge market-based rates arbitrarily ignores an undisputed competitive reality. There is no consumer, no customer in the Tyler market that would be subject to any super competitive price if petitioners ever chose to charge one. The Commission not only acknowledged that reality, it relied on it in order to reject petitioners' claim that new entrant pipelines would enter the market in the event of a super competitive price increase. Yet the Commission nonetheless concluded that the petitioners could exercise market power because the Commission's HHI calculation exceeded $2,500. The Commission's decision cannot stand. As the D.C. Circuit held in the Mobile Pipeline case, the Commission's calculation of a high HHI is no substitute for basic logic and commercial reality. The reality is that there is no basis to continue to force petitioners to charge regulated rates when there is no showing and no customer over whom they could ever exercise market power. The Commission's decision should be vacated with instructions to authorize the market-based rates. So, Ms. Johnson, it seems to me from the briefing which is very good, I must say, on all sides in this case, that the basic divergence, I think, is when you say there's only one customer in the market and you say it's DELEC. DELEC's the only customer. Am I saying that right, DELEC?  DELEC's the only customer because it's the only refinery and they are insulated from market forces because of their agreement with Red River, is it? And then the Commission comes back and says, no, there are many customers because Tyler is an intermediate market and there are companies that are passing through their product through the pipelines and so those are the people who would be affected by super competitive rates. Is that the basic disagreement here? I mean, as I see it, I'm trying to, it's very complicated. I'm trying to zero in on what's the basic disagreement and if that's the case, what's your response to that? I think that is the basic disagreement if by Commission you mean Commission on Appeal. Oh, I'm sorry, yes, yes, yes. Because the Commission in its decision below did not find that pass-through shippers were the problem. Okay. In fact, it rejected this effective capacity method which is pretty far in the weeds for how to calculate HHI but it is based on the Commission rejected the argument of the government that it ought to impose a different method in order to take account of pass-through shippers. It said, no, we always use the effective capacity method which focuses only on who's in the market and that's what we're going to do here. So the Commission calculated the HHI without regard to pass-through shippers. So there's nothing... That's what you're saying. After the ALJ, the Commission didn't consider the intermediate market reality? That's right, that's right. Now you're saying they're trying to bring that back in on appeal. Right. Okay. So we say there's a Chenery problem there before you get to the question, the merits of the pass-through which... No, that's exactly... I want to talk about the Chenery problem and I want to say this is so interesting. When I was a young lawyer, a hundred years ago and I used to want to be an antitrust lawyer, my job was to calculate the Herfindahl numbers and I did them by hand, doing math until I had a little computer program to do it. And so it is... I never thought I would have a case that would deal with the HHI. So here we are today. My question is if the Commission did not rely upon this theory in its decision, don't we have to remand it back? I'm not sure... I have a question about vacate in issue versus remand but I'm not sure if we can even go forward if this is a new theory on appeal. You certainly cannot affirm on the basis of a new theory on appeal. We do think that you could vacate and remand because this basic economic reality does not change. There's nothing the government can say to change it and that's where the pass-through shipper argument we think fails in the merits as well and the reason for that is really kind of twofold. One is that by definition, these pass-through shippers have no need to use Tyler and that is the reason that you normally would focus on the consumption in the market because if somebody is trying to ship oil from the Permian Basin which the Commission held as a competitive market and they're trying to get it to the Gulf Coast which the Commission said is a competitive market then if there is an inflated price to go through Tyler then shippers will just choose some other path. But wouldn't that be what we would remand for us to be considered whether or not there are enough routes and things and it makes logical sense but that wasn't the reason given and so shouldn't they go through this and discuss that and do their job in that way especially when the data used is COVID data and it just seems that it's crying out for a do-over perhaps and I'm not judging the case. A few things, Your Honor. One is that this case has been ongoing for a very long time. I believe it was filed in 2018. So that's one problem with a do-over is that it just stretches it out longer. The second thing that I would say is that there is a problem. It's not just an application problem of the fact that here we did put in evidence that there was not just evidence but the Commission found Permian Basin was a competitive market, Gulf Coast was a competitive market but it's also the case that the Commission recognized in its decision that it has applied the effective capacity method in every decision it has done since 1994 and the reason for that is that is the same thing as not looking past the market. That is looking at the capacity actually consumed in the Tyler market and saying that is our only consideration and so the Commission has adopted that recognizing that no method is perfect but that is the best way to take account for the basic competitive realities of who actually needs oil in that market and so for that reason we think whether there is sufficient competition upstream and downstream I think there clearly is but we also don't think that it was proper for the Commission would be proper for the Commission to even reach that question because as a matter of their practice and treating the similar parties similarly they have consistently focused on consumption in the market and the consumption in the market is the Delft refinery and so they have to even look at this pass-through question is a departure from what the agency has consistently said is the proper way to go about it. And on the point that they decided the case earlier that the HHI numbers are too high they would have needed to look at the pro-competitive and anti-competitive effects because of the range that the number that the 2600 or whatever it is and they would have needed to do that because this is not a it doesn't give you enough information with the HHI numbers enough by themselves. Right, the HHI numbers themselves I mean it's a helpful tool and that's the reason that FERC uses it but they're not so dispositive this is on the edge number perhaps on the edge and so therefore it should have included pro-competitive and anti-competitive effect analysis which was not done. That is certainly right we also think more fundamentally in Mobile Pipeline, the DC Circuit case the commission had actually concluded that the applicant was a monopolist it had a 100% market share which would be an HHI of 10,000 so nowhere close to a close call and then Judge Kavanaugh said this doesn't make any sense like I'm looking at this and I see your number is 10,000 but I can't make the logic of this make sense given that there is a lot of competition so even if it were dispositive there's still we should look at the pro-competitive and anti-competitive effects that's right but certainly where it's on the edge between them and you're trying to evaluate that you need to do that that's right so what's the best case I'm still hung up on remand or just straight up vacate and move on so what can you help with the case law now so the first thing that I would say is that the government hasn't actually contended it should not be vacated and remanded and in fact they dropped that argument entirely so we think they have waived the request for a further reconsideration probably because as I said I don't really think there's anything to reconsider given that the answer is clear under how the facts are set up but also this court has remanded in the BNSF Railway case versus Federal Railroad Admission the court held that when there's no ambiguity as to what the agency must do on remand remanding without a specific instruction would be an idle and useless formality we think that's where we are here we are in a case where everybody agrees DELEC is the only customer in Tyler that's going to use this oil everybody agrees that DELEC has long term contracts that mean it's not going to be subject to any increase in price everybody agrees that there's more capacity in the market than DELEC needs even if you ignore applicants pipelines entirely given those facts there's no ambiguity about what the commission should do when the case comes back to it if the case were to come back to it and that's why we don't think that it makes sense to reopen this multi-year proceeding to end up with the commission doing further analysis of the pass-through market question there's a lot of reasons that you don't consider that and one is what is this inquiry going to look like are we going to have to look at every market from which someone could conceivably send oil through Tyler to get to somewhere else are we focused just on the markets where shippers are currently sending oil through Tyler because they don't there's not really a reason to limit it in that way at least a theoretical one well I mean you could I think you could easily say are there ones outside of Tyler that take you from the premium that take you where you need to go are there two or three other options that would I mean that would be common sense way to analyze it well and the commission the most obvious options have already been analyzed because the commission did hold here that the Permian Basin was a competitive origin market so that was not even set for hearing and then after the hearing it concluded that the Gulf Coast markets were competitive destination markets so it has already concluded that those markets are competitive and then the only question I suppose is could there be other markets from which people may also ship through Tyler and then what other locations could they ship through and the both FERC has recognized and then the DC Circuit recognized the mobile pipeline that all shippers care about is the ultimate price so no shipper is sitting there saying I really want to make sure mine goes through Tyler and given that and given that we're talking about a pipeline system that goes from Permian Basin to the Gulf Coast and there's already been a finding in this case that the Permian Basin is a competitive origin market and the Gulf Coast is a competitive destination market the questions the sufficient questions have been resolved to show that there's no way for the applicants to or the petitioners to exercise market power and if we can't exercise market power then we should be permitted to charge market based rates and let the market set those rates rather than regulated rates so the Husky brief is just wrong? well I don't I don't know if they're what they're wrong I mean they're wrong in their legal arguments for sure their argument two things one is these regulated rates are artificially government suppressed rates so it may well be that competitive rates are higher rates and that Husky would prefer to pay government regulated suppressed rates than market rates that is not an entitlement that they have though if we are not able to exercise market power the second thing that I would say about Husky is I don't they have not they are just asserting well we would pay more and they have not gone into even in their brief defending that they could not ship through another pathway but the most important point and Noble's pipeline referenced this as well is that saying that a price is lower than the saying that your regulated rate is lower than you would have to pay in a market is not the same thing as saying that the petitioners can charge a super competitive price it just means that we're entitled to charge the price that the market can bear and if that price is somewhat higher than the regulated rate then Husky is getting a windfall and the status quo and the fact that they want to keep that windfall is understandable they're not wrong to think it would be better to keep a windfall but it doesn't mean that they're entitled to do it when we can't exercise market power forgive me I don't understand this market this area very well but if you're able to charge market rates DELEC I think is not going to have to pay them right at least for I don't know for the foreseeable future so who's going to pay them pass through shippers so pass through shippers would pay the market rate and then to the extent that petitioners ever attempted to oppose a super competitive rate those pass through shippers would just use the other competitive options available in the Permian Basin and available to ship to the Gulf Coast refineries and they just change but they pay market rates in other markets and can pay market rates in this market okay thank you thank you thank you  I don't know can you all hear well at your table okay in the back in the back of the room the clog is the clog bigger I don't know it seems like the clog is bigger it does look thicker it didn't this gal yes your honor may it please the court Angela Gao      for the commission I want to start with the idea that petitioners presented that the commission somehow post hoc'ed um its consideration of other shippers it it did not while the commission declined to adopt one of the alternative HHI methods it nonetheless agreed with the ALJ that its existing approach the effective capacity method um comes up short in an intermediate market like Tyler because it doesn't account for volumes from past through shippers the commission in its orders repeatedly emphasized that the effective capacity method shortcomings leads to HHI and market share that is um artificially understated and too low and that these metrics of petitioners could actually be significantly higher and importantly the commission relied in part on the fact that petitioners metrics were artificially understated to further support its determination that this case did not present a close call on the metrics so just because the commission uh didn't reach the issue of you know how do we fix these shortcomings with the effective capacity method what alternative methods should we adopt it doesn't negate the findings that it made with respect to um the other shippers in the market and Tyler the fact that Tyler is an intermediate market and that its existing HHI calculation has shortcomings that will understate artificially the metrics that it produces I also want to talk about um a little more about why the commission didn't adopt an alternative method um it declined because it was an issue that the commission didn't need to reach the commission when it acknowledged these shortcomings um and found that the effective capacity method doesn't account for a large majority of these deliveries um and cited evidence that uh the 2870 HHI was too low and that these numbers should actually be significantly higher um it recognized these shortcomings but it explained that it didn't need to reach this extra step of  how to fix the shortcomings and come up with an alternative method because the outcome would be the same regardless the existing numbers on the effective capacity method um that don't account for pass-through shippers the 2870 couldn't exercise market power so there was no need to move on to this extra step of how do we come up with an  method um and how high should that HHI actually should be it therefore declined to move on um to set a new um method of calculating HHI in this case where doing so wouldn't affect the ultimate outcome. So it sounds like the premise of this what you're saying is the commission um considered DELEC was the only consumer on this  right? We don't need to move on to this next step of calculating HHI    don't  move  next step  calculating HHI             HHI  case where  don't     next step of calculating HHI in this case where we don't need to move on to this next step of      don't      step of calculating HHI  in this case where           HHI in this   don't need to  on to  next to move on to next step of calculating  move forward on to the next step of calculating                        HHI in this case where we don't move forward on to the next step of   in this case where we don't       calculating  in this case where we  move forward on to the next step of        calculating   we don't move   the next          step from     We have cited cases that indicate we consider the factors in the event of a post call . And there is a reason for that . Something like excess capacity ratio is not just positive of the case. You can imagine excess capacity ratio depends on who holds that excess  and how many  are there in the market. If there are only a few competitors and those with the greatest access to  market , it can charge monopoly prices because it dominates the market. The FERC is not there to try to prop up the market. They want competitive prices for shipping. I would assume that that is the goal to the extent that the FERC has a role to play here. So, regardless of, if they have all this excess capacity and they can't sell it because they are charging a super competitive price, then they are shooting themselves in the foot.  will have to lower their price to use their excess capacity or be content with what they have. What is the interest of FERC there? They are not going to be able to  the super competitive price they are just going to have excess capacity if there are adequate alternative channels to Tyler, unless FERC's goal was actually to prop up Tyler itself. It's not to prop up  itself, but as your honor just mentioned, alternative shippers theory, they are free to refile their application and the  can then consider that instead of having this debate on appeal, which as you noted is inappropriate. But the commission did not decide it on this basis. The commission just said the numbers themselves are enough. And the numbers are not, they are like within 200 points of other cases where it's not enough. The numbers are higher than the other cases in which the commission has found a close call. But I'd also emphasize that it's not just numbers. The commission decides each case on a case-by-case basis based on those particular facts. And here, this is a market in which petitioners have only one other pipeline competitor and also local trucking. Those are their only competitors. They have an enormous market share of 38%. And it's a highly concentrated market. So the other cases in which perhaps the numbers were within 200 basis points while still being lower, they don't have the same factual circumstances that the commission was grappling with here. Also, the thing is, with these secondary factors, the commission's primary determinants of market power is, as I've mentioned, HHI and market share. It's not that something like excess capacity could be used to supplant the commission's primary analysis. That's why it only considers those factors in a close call case, as you've mentioned, in an edge case where something like excess capacity might be able to tip the scales in one way or another. But here, you know, being, I  370 points away from its usual threshold for competitiveness, the commission reasonably determined that's just not a close call, in addition to the fact that they believe the market was already understated due to the other factors. I see that my time is up. Thank you, Ms. Gallagher. We appreciate your argument today. Thank you very much. We'll now hear from the intervener, Husky Marketing and Supply, Mr. Wagner. Good morning. Good morning. Craig Wagner for Husky Intervener. I just want to touch on a couple of  First of all, we don't agree that this is a post hoc rationalization. FERC stated in the rehearing order, paragraph 48, that the analysis of market power required to support the authority for an oil pipeline to charge market based rates involves an inquiry into whether there's an adequate competition of crude oil supply in the relevant market, not whether an existing consumer can avoid paying a monopolist rate under certain circumstances. That also ties into the burden of proof issue. They bore the burden of proof before FERC to establish that they could not exercise market power over their transportation customers. The Interstate Commerce Act requires that rates be just and reasonable for all consumers. They chose to focus exclusively on one single customer, the owner of a refinery that was exempt from paying the market based rates and then they turn around and say that therefore we can charge everyone else market based rates. Because these people will be exempt, you should just pay. As far as the idea that you can just look downstream and say you have many customers, there's no factual finding in this case that there is adequate competition to Ohio. We tried. We proposed additional destination markets centered around Toledo and Lima, Ohio, around the refineries that we own there. Petitioners successfully opposed to that. They said that's irrelevant. Your interests don't matter. We've already exempted the one customer that matters. It takes the minority of deliveries inside the  And ultimately, this is not a case where we should be talking about vacating or remanding for additional fact finding. It's a burden of proof issue. It's their burden to prove we don't have the ability to exercise market power. It's their burden to prove that their customers would vote with their feet, vote with  their       go through Tyler. We need to do an actual analysis. More specifically, they needed to do an actual analysis of that, and they failed to do so. Another thing I would like to add is that FERC didn't agree by the way that it calculated the HHI that the only consumption that matters is inside Tyler.  made an assumption I'm sorry, it expressed a preference for looking at consumption inside a market, but it also recognized that in the case of an intermediate market like this, the effective capacity yields an artificially low HHI. There's an excellent explanation of that in the Plains case cited I believe in the commission's brief, 188 FERC 61 103 paragraph 33. It's also discussed in the opinion here, paragraph 63, the rehearing opinion at paragraphs 117 and 175. We need to actually take a look, again, commercial realities. Let's look at who it is that has excess capacity, who it is that they're competing with, who does not have    opinion at appendix 6, we see that every single interstate pipeline in that market, they own it but one. Every single one. So if someone has excess capacity, it's their excess capacity. And as far as, again, commercial realities, that's what they're    their market share, their actual unadjusted market share is in the record. I can't say it in open court, but it's shown in the record in the initial decision,  Why can't you say it in open court? Because the other side designated as sealed before FERC, their record is  It's just happened to be under seal in the FERC record. One other thing I'd like to add is that right, so yeah, if we take a look at your question about what case says 2500 is a  Let's look at the opinion at paragraph 59. Footnote 181, it cites opinion 558, the Gutman case, opinion 573, the Seaway case. The quote there is commission president supports the granting of an application for market based rate authority in each case where the HHI is 1800 or less. In most cases where it's less than 2500, where it's over 2500, they don't have a single case showing an over 2500 HHI that is also acknowledged by the commission to be understated warrants a grant of market based rate authority. So again, I would say how do you believe the fact that this is numbers during COVID affects this? I think that that's when they filed the application. I think that you have 2019 data and it's their position that that's a baseline and that's a perfectly acceptable position to take but you have to prove it out. What impact do you think it makes on the HHI? Do you think that it makes None. I think it has none. I think it's equivalent about whether you should increase the local production, which is a minor competitor compared to the dominance of the energy transfer owned pipelines. So it's 48,000, 52,000 or something like that. That doesn't matter. You don't think it's going to impact at all? No. I think it would be wrong to adjust it and to look at the impact                            on the energy                           transfer   I think it's equivalent about whether you   the local production, which is none. I think it's equivalent about whether you should increase the local production, which is a minor competitor compared to the  production. I think it's equivalent  minor                            competitor compared to  production. I think it's                                                        whether